**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guillermo Tenorio-Serrano, | No. CV-18-08075-PCT-DGC (BSB) |
| Plaintiff, | |
| v. | **ORDER** |
| James Driscoll, et al., | |
| Defendants. | |

Plaintiff Guillermo Tenorio-Serrano is in custody on a DUI charge in Coconino County, Arizona. The United States Immigration and Customs Enforcement agency ("ICE") has determined that Plaintiff is not lawfully present in the United States and has issued a detainer and administrative warrant for his arrest, which could lead to his removal from the country. Plaintiff brings this lawsuit against Coconino County Sheriff James Driscoll, Coconino County Jail Commander Matt Figueroa, the Coconino County Jail District, and members of the Coconino County Board of Supervisors, challenging their policy of holding persons in state custody for up to 48 additional hours as requested in ICE detainers and warrants. Plaintiff asks the Court to preliminarily enjoin the Sheriff's Office and the Coconino County Detention Facility ("CCDF") from detaining him on the ICE warrant after he posts bail or resolves his state charges. Doc. 14. Plaintiff's preliminary injunction motion is fully briefed, and the Court heard oral

argument on June 28, 2018. Doc. 56. For the reasons that follow, the Court will deny the request for a preliminary injunction.

**I.      Facts.**

On December 11, 2017, Plaintiff was arrested for allegedly driving under the influence in violation of Arizona misdemeanor statutes and was confined in CCDF as a pretrial detainee. Doc. 18 ¶ 2. On December 12, 2017, the Flagstaff Justice Court set Plaintiff's bail at $2,000. *Id.* ¶ 3. The bail was the only condition of Plaintiff's release. *Id.* ¶ 118. The same day, Plaintiff's sister visited CCDF to inquire whether Plaintiff would be released if the $2,000 bail was posted. *Id.* ¶ 120. A CCDF employee told her that payment of the bail would not result in Plaintiff's release because an ICE detainer had been lodged against him. *Id.* ¶ 121. On December 15, 2017, Joseph Breckinridge offered to post Plaintiff's bail with a personal credit card, and was told by a CCDF employee that while it typically takes pre-trial detainees one hour to be released after bail is posted, Plaintiff would be held for up to 48 hours due to an "ICE hold." *Id.* ¶¶ 122-28. Given this statement, Mr. Breckinridge did not tender Plaintiff's bail. *Id.* ¶ 130.

A Sheriff's Detention Facility Policy and Procedure effective since 2008, and revised on July 28, 2017, provides that upon reasonable suspicion that an inmate in the facility is unlawfully present in the United States, CCDF staff must notify the Detention Removal Office ("DRO"), a subsidiary of ICE, and have the inmate speak to the DRO over the telephone. Doc. 18-1 at 1. If the DRO determines that the inmate is in the country illegally, ICE will fax two forms to CCDF to be placed in the inmate's file: a Department of Homeland Security ("DHS") Form I-247A Notice of Action – Immigration Detainer ("detainer"), and either a DHS Form I-200 Warrant for Arrest of Alien or a DHS Form I-205 Warrant of Removal/Deportation ("ICE warrant"). *Id.* A hold will then be placed in the inmate's file, and, when the inmate posts bail or resolves his state charges, detention staff will notify the DRO. *Id.* at 1-2.

The policy further provides that "the detainer will remain in effect and the inmate will remain in custody until" (1) the DRO or ICE sends a Form I-247A release notifying

CCDF to remove the detainer, (2) ICE takes custody of the inmate, or (3) the "detainer period" expires. *Id.* at 2. The detainer period "commences when the local or state criminal justice agency has no other legal basis for continuing the detention[,]" and "shall not exceed 48 hours." *Id.* "In the event DHS/ICE fails to assume actual physical custody of the detainee within 48 hours of the onset of the federal detainer (including Saturdays, Sundays and holidays) the detainee must be released." *Id.*

On December 12, 2017, ICE officials in Phoenix, Arizona became aware that Plaintiff was in the custody of the Sheriff and faxed two documents to CCDF: a Form I-247A detainer and a Form I-200 ICE warrant. Doc. 18 ¶¶ 82-83; Doc. 18-4. The detainer is signed by an ICE deportation officer and states that there exists probable cause to believe that Plaintiff is a removable alien based on "[s]tatements made by the alien to an immigration officer and/or other reliable evidence." Doc. 18-4 at 1. It is addressed to CCDF, and requests that CCDF maintain custody of Plaintiff for a period not to exceed 48 hours beyond the time he would otherwise be released. *Id.* The ICE warrant is signed by Barry Jansen, an authorized immigration officer, and is addressed to "any immigration officer authorized pursuant to Sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." *Id.* at 2. Neither the Sheriff's Office nor CCDF has a written "287(g)" agreement with the federal government. Doc. 18 ¶ 98; *see* 8 U.S.C. § 1357(g).

Plaintiff argues that the Sheriff's policy of continuing to hold pre-trial detainees after they have satisfied all conditions for release on their state charges is unlawful because the Sheriff lacks authority under state and federal law to detain on the basis of an ICE warrant and detainer, and such detention violates the Fourth Amendment to the U.S. Constitution and Article II, § 8 of the Arizona Constitution. Doc. 14. Plaintiff seeks a preliminary injunction ordering Defendants to release him immediately upon posting of his $2,000 bail. *Id.* Defendants oppose the request for injunctive relief (Docs. 22, 28), as does the United States, which has filed a detailed statement of interest pursuant to 28 U.S.C. §§ 517 and 518 (Doc. 41).

## II. Legal Standard.

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "But if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. For the Wild Rockies*, 632 F.3d at 1135). "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x 621, 624-25 (9th Cir. 2017) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

## III. Article III Standing.

Defendants and the United States argue that Plaintiff lacks standing to challenge the Sheriff's detainer policy because he has not been injured by it. *See* Doc. 41 at 12-14. They argue that Plaintiff's current detention results from his DUI charge and his failure to post bail, not from Defendants' policy. They assert that any future detention under Defendants' policy is merely speculative. The Court does not agree.

"In order to invoke the jurisdiction of the federal courts, a plaintiff must establish 'the irreducible constitutional minimum of standing,' consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury in fact must constitute "an invasion of a legally protected interest which is (a) concrete and particularized, and

(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). At the preliminary injunction stage, a plaintiff must make "a clear showing of each element of standing." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013).

The injury Plaintiff alleges is not his current detention – it is the 48-hour detention he will face under the ICE detainer if he posts bail. The Supreme Court has explained that an "allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation omitted). Plaintiff's future injury is "certainly impending." Defendants' written policy mandates that he be detained for up to 48 hours if CCDF has received an ICE detainer and warrant. Doc. 18-1. CCDF has received these documents and placed them in Plaintiff's file, and CCDF staff members have twice confirmed that CCDF will hold Plaintiff on the detainer if bail is posted.

At oral argument, Defendants relied on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), and argued that Plaintiff's injury is dependent on a chain of speculative future events because ICE might withdraw the detainer request, choose not to act on it, or act quickly so that Plaintiff's detention is not extended beyond his state release time. In *Clapper*, there was no concrete indication that the challenged statute would actually be used against the plaintiffs. Rather, the plaintiffs' injury depended on a "highly attenuated chain of possibilities" that required multiple independent actors to take actions within their discretion. 568 U.S. at 410-14. Here, every action necessary to trigger Plaintiff's injury has been taken: ICE has submitted a detainer and warrant to CCDF, CCDF has placed the documents in Plaintiff's file, and CCDF has a written policy to detain Plaintiff if he posts bail. The mere possibility that ICE might somehow change its mind or act quickly does not render Plaintiff's imminent injury unduly speculative. As the Supreme Court has explained, when an individual is subject to threatened enforcement of a law, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 134 S. Ct. at 2342. Other cases are in accord. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary

that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat – for example, the constitutionality of a law threatened to be enforced." (emphasis in original)).

Plaintiff has shown that his future injury is concrete, particularized, and imminent, not conjectural or hypothetical. Plaintiff presents undisputed evidence that he stands ready to post bail or have someone post bail on his behalf, and it is clear that he will be held under the ICE detainer when that occurs. The injury results from Defendants' detainer policy and is therefore fairly traceable to their conduct, and would be redressed by an injunction prohibiting Defendants from detaining him based on the ICE detainer and warrant. Plaintiff has standing.

**IV.   Likelihood of Success on the Merits.**

Plaintiff makes three merits arguments. *See* Docs. 14, 51. First, he asserts that the Sheriff lacks authority under state law to make arrests for federal civil immigration violations. Second, he argues that federal law prohibits the Sheriff from complying with the ICE detainer. Third, he argues that detaining him under the federal detainer and warrant would violate the Fourth Amendment and a corresponding provision of the Arizona Constitution. In addressing these arguments on a preliminary injunction motion, the Court's task is to assess probabilities – whether Plaintiff is *likely* to succeed on these claims. The Court is not making a final decision on the merits. That decision must await a more complete record and more thorough briefing.[1]

**A.   State Law Authority.**

The parties present competing interpretations of Arizona law. Plaintiff argues that county sheriffs in Arizona may act only when expressly authorized by statute, and that no

---

[1] Plaintiff makes a lengthy preemption argument in his reply memorandum (Doc. 51), but the Court will not consider arguments raised for the first time in a reply brief. *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 n. 6 (9th Cir. 2004).

- 6 -

statute authorizes the Sheriff to make civil immigration arrests. Defendants argue that Arizona sheriffs retain broad common law enforcement authority except where modified by statute, and that detaining Plaintiff under the federal detainer falls well within this power. Both sides rely on older Arizona cases to support their position.

### 1. Common Law.

Plaintiff argues that Arizona sheriffs lack common law powers and may act only when a statute expressly grants them authority. Article XII, § 4 of the Arizona Constitution states that the "duties, powers, and qualifications" of various county officers, including sheriffs, "shall be as prescribed by law." Plaintiff relies heavily on *Arizona State Land Dep't v. McFate*, 348 P.2d 912 (Ariz. 1960), which interpreted similar language in Article V, § 9 and held that "prescribed by law" means "the statutory law of the State and not the common law." *Id.* at 914.

*McFate* concerned the powers of the Arizona attorney general. The Arizona Supreme Court had previously held that "'in Arizona the Attorney General has no common-law power.'" *Id.* (quoting *Westover v. State*, 185 P.2d 315, 318 (Ariz. 1947)). In the absence of common law power, the Supreme Court in *McFate* held that the attorney general possesses only those powers conferred by the Arizona legislature. *Id.*; *see also Shute v. Frohmiller*, 90 P.2d 998, 1003 (Ariz. 1939), *overruled in part by Hudson v. Kelly*, 263 P.2d 362 (Ariz. 1953) ("no common-law powers or duties can attach to [the attorney general's] office but only those prescribed by statute"). Because Article XII, § 4 – the portion of the Arizona Constitution that addresses sheriffs – contains the same "prescribed by law" language as the attorney general provisions in Article V, § 9, Plaintiff argues that sheriffs also possess only powers prescribed by statute.

This is a credible argument, and it appears to be consistent with a number of Arizona cases. But it also appears to be contradicted by the Arizona Supreme Court's decision in *Merrill v. Phelps*, 84 P.2d 74 (Ariz. 1938). That case directly addressed the

power of county sheriffs in Arizona. The Supreme Court engaged in a fairly detailed discussion of the common law powers of sheriffs in England and reached this conclusion:

> The common law of England, so far as applicable to our circumstances and conditions, is the law of Arizona. The power exercised by the sheriff under the common law still pertains to our sheriff, except in so far as it has been modified by constitutional and statutory provisions.

*Id.* at 76 (citations omitted). This language clearly states that Arizona sheriffs possess common law powers, and that those powers can be "modified" by the legislature. *Merrill* goes on to discuss various Arizona statutes and finds that they impose on sheriffs the duties that were at issue in the case. *Id.* at 76-78.

Both sides cite *Merrill*. Defendants and the United States rely on its statement that sheriffs retain common law powers. They argue that this includes authority to arrest and detain for both criminal and civil offenses, and to cooperate with other sovereigns. Doc. 28 at 7-13 (citing, *e.g.*, 70 Am. Jur. 2d Sheriffs, Police, and Constables § 31 ("Common law duties are many and varied and encompass more than traditional law enforcement.")); Doc. 41 at 20-22. Plaintiff, by contrast, contends that *Merrill* ultimately looked to Arizona statutes for its decision, showing that the powers of sheriffs must be found in statutes. Both readings are plausible, but the Court notes that *Merrill*'s express statement that sheriffs retain common law powers stands in direct contrast to the statements in *McFate* and related cases that the Arizona attorney general does not possess common law powers. *McFate*, 348 P.2d at 914. This contrast suggests that there may be a difference between the sources of power for the attorney general and sheriffs, something the parties have not fully briefed.

Plaintiff cites an even older case, *Weidler v. Arizona Power Co.*, 7 P.2d 241 (Ariz. 1932), that addressed the duties of county treasurers. Those duties are set forth in the same constitutional article as county sheriffs – Article XII, § 4. But *Weidler* devotes only two sentences to the issue, stating in conclusory language that because the treasurers' duties are "as prescribed by law," courts must "look to the statute for such duties, and

nothing not contained therein or reasonably to be implied from its terms can be held to be an official duty of the county treasurer." *Id*. at 242. *Weidler* does not discuss whether county sheriffs retain common law powers, and was decided six years before *Merrill*. If *Weidler* had announced a rule that Article XII, § 4 strips all county officers of their common law authority, *Merrill* presumably would have had no need to analyze this issue and would not have stated that the "power exercised by the sheriff under the common law still pertains to our sheriff[.]" *Merrill*, 84 P.2d at 76. The Court does not find *Weidler* to be persuasive authority in support of Plaintiff.

Plaintiff also points to a Ninth Circuit case, *Gonzales v. City of Peoria*, 722 F.2d 468, 477 (9th Cir. 1983), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). *Gonzales* held that Arizona law enforcement officers could arrest persons for criminal violations of the federal Immigration and Nationality Act ("INA"). In dicta, and without citation to any Arizona authority, *Gonzales* also stated that "this authorization is limited to criminal violations" and the "[a]rrest of a person for illegal presence would exceed the authority granted [to the City of Peoria] police by state law." *Id*. at 476. The Court does not find this unsupported dicta to be persuasive authority for Plaintiff's position.

Both sides also attempt to invoke general principles. Plaintiff notes that "[t]he law is very jealous of the liberty of the individual, and while peace officers in the discharge of their duties must not be obstructed or interfered with, they may not lawfully deprive a citizen of his liberty except in the manner provided by law." *Platt v. Greenwood*, 69 P.2d 1032, 1036 (1937). Defendants note that "[p]rison administration is . . . a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint." T*urner v. Safley*, 482 U.S. 78, 85 (1987); *see also Arpaio v. Baca*, 177 P.3d 312, 321 (Ariz. Ct. App. 2008) (courts have limited authority to interfere with a sheriff's duties to maintain and operate the county jails). These general provisions provide helpful context, but they do not,

without a more thorough exploration of the relevant common law, constitutional, and statutory provisions, provide a clear rule of decision at this stage of the litigation.

In short, both sides cite relevant authority, but the most salient cases are somewhat ambiguous and more than 50 years old. The parties have not briefed the history of the constitutional provisions at issue, the intent of the drafters, or the common law roots of the various offices covered by the provisions. Plaintiff's arguments clearly raise serious questions for the Court's consideration, but the Court cannot conclude that he is likely to succeed on the merits.

### 2. Statutory Authority.

Given the present uncertainty concerning the common law powers of Arizona sheriffs, the parties' statutory arguments are not of much help. Plaintiff cites no statute that expressly restricts a sheriff from cooperating with federal immigration authorities. To the contrary, the Arizona legislature has stated a preference for such cooperation in S.B. 1070, as will be discussed below. Thus, if *Merrill* is to be taken at its word – that sheriffs possess common law powers except to the extent modified by the legislature – Plaintiff has identified no express modification that would prevent Defendants from cooperating with the ICE detainer and warrant.

Plaintiff cites statutes that govern procedures for enforcing warrants issued by another county or state and notes that no statute addresses the procedure for responding to federal administrative warrants. *See* Doc. 14 at 4 (citing A.R.S. §§ 13-3964, 13-3841, et seq.; Ariz. R. Crim. P. 4.1(c)(2)). Plaintiff notes that Arizona statutes outline the sheriff's authority to make warrantless and unilateral arrests in the criminal context and in some civil contexts, but that no statute authorizes such arrests for civil immigration violations. Doc. 51 at 4-5 (citing A.R.S. § 13-3883(1), (2), (4) (warrantless criminal arrests); § 36-525(B) (psychiatric commitment); § 8-303(C) (juvenile delinquents and runaways); § 36-2026(A) (emergency intoxication commitment)). Again, however, these arguments are helpful only if the sheriff lacks common law power to detain Plaintiff.

Defendants and the United States argue that a number of Arizona statutes authorize the sheriff to comply with ICE detainers (*see* Doc. 28 at 9-13; Doc. 41 at 22-24), but none of the statutes appears to support this assertion. Defendants cite a statute requiring the sheriff to arrest for "public offenses." Doc. 28 at 9 (citing A.R.S. § 11-441(A)(2)). But the purpose of that duty is "the prompt and orderly administration of *criminal* justice." *State v. Monaco*, 83 P.3d 553, 558 (Ariz. Ct. App. 2004) (emphasis added). Defendants cite statutes authorizing the sheriff to "take charge of and keep the county jail," A.R.S. §§ 11-441(A)(5), "execute all process and orders regular on their face and issued by competent authority," A.R.S. § 11-447, "arrest a person who is already incarcerated" in the county jail, A.R.S. § 13-3907, and serve civil writs, A.R.S. § 12-1574. But these statutes do not expressly authorize the Sheriff to continue detention at the request of a federal agency.

Defendants cite A.R.S. § 31-122(A), which provides that "[t]he sheriff may receive and keep in the county jail any prisoner committed thereto by process or order issued under the authority of the United States." This appears to be the most relevant statute, but the Court needs further briefing on the scope of this statute and what is meant by "process or order."

Defendants argue that they are authorized to hold inmates on ICE detainers pursuant to their intergovernmental service agreement with the federal government ("IGSA"), on which ICE is an authorized rider. Doc. 28 at 10-11. The IGSA is an agreement for housing federal inmates and receiving reimbursement from the federal government, but Defendants point to nothing in it that purports to grant them authority to make arrests on behalf of the federal government. Indeed, Defendants and the United States appear to have different understandings of how the IGSA functions in the context of ICE detainers. *Compare* Doc. 28 at 10-11 ("[O]nce the ICE detention period begins, an inmate is no longer in Defendants' custody, but the custody of the federal government."), *with* Doc. 41 at 5-6 ("Until an immigration officer – or a state or local officer who has been delegated immigration officer authority under a 287(g) agreement –

arrests the detainee, the IGSA is not triggered, and the detainee remains in state custody.").

Defendants and the United States point to A.R.S. § 11-1051, commonly referred to as S.B. 1070, as supplying the sheriff's authority. Doc. 28 at 11-13; Doc. 41 at 22. The Arizona legislature enacted S.B. 1070 in 2010 to address the "compelling interest in the cooperative enforcement of federal immigration laws throughout all of Arizona." Laws 2010, Ch. 113, § 1. Its purpose is to "discourage and deter the unlawful entry and presence of aliens and economic activity by persons unlawfully present in the United States." *Id.* Originally, S.B. 1070 authorized state and local officers to make unilateral warrantless arrests if they had probable cause to believe a person committed a public offense that made the person removable. In *Arizona v. United States*, 567 U.S. 387 (2012), the Supreme Court held that this portion of the statute was preempted. Defendants do not appear to dispute that even if this portion were still in effect, it would not authorize the detentions at issue in this case.

The statute states that "[n]o official or agency of this state or a county, city, town or other political subdivision of this state may limit or restrict the enforcement of federal immigration laws to less than the full extent permitted by federal law." A.R.S. § 11-1051(A). Defendants argue that this language expressly authorizes Arizona sheriffs "to comply with the enforcement of federal immigration law." Doc. 28 at 13. But the cited language is stated in terms of a prohibition: state and local officers may not limit the enforcement of federal immigration laws; it does not appear to be an affirmative grant of authority. The statute clearly establishes a strong state policy in favor of cooperating with federal immigration authorities, but it does not appear to supply the express authorization Plaintiff claims is necessary.[2]

---

[2] The parties each rely on cases from other jurisdictions addressing the authority of state officials to comply with ICE detainers. *See, e.g.*, *Lunn v. Commonwealth*, 78 N.E.3d 1143 (Mass. 2017); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 173 (5th Cir. 2018). But none is directly on point. In *City of El Cenizo*, Texas had enacted a statute that required local officers to cooperate with ICE detainers. 890 F.3d at 174. In *Lunn*, Massachusetts case law indicated that its law enforcement officers had no authority to arrest generally for civil matters. *Lunn*, 78 N.E.3d at 1154-56. Neither addresses

### 3. Serious Questions.

Plaintiff's arguments raise serious questions that require further litigation, but the Court cannot conclude that he is likely to succeed on his claim that Defendants lack authority under state law to detain individuals based on civil immigration offenses. The Court will consider below whether these serious questions are sufficient to support a preliminary injunction.

### B. Federal Authority.

Plaintiff claims that Defendants' conduct is prohibited by the INA because Defendants have not entered into a § 287(g) agreement with the federal government. *See* Doc. 51 at 11-17. Section 287(g) of the INA, codified at 8 U.S.C. § 1357(g), allows DHS to enter into formal written agreements with state and local governments to "perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States." 8 U.S.C. § 1357(g)(1). State officials empowered under § 287(g) agreements are subject to DHS's supervision, and they must have knowledge of federal law and receive adequate training. § 1357(g)(2), (3). Citing these provisions, Plaintiff argues that the Sheriff cannot detain aliens for immigration violations – a "function of an immigration officer" – because the Sheriff has not entered into a § 287(g) agreement. Doc. 51 at 11-17.

Defendants argue that they have authority to comply with ICE detainers pursuant to § 1357(g)(10), which states:

> Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State--
>
> (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or

---

Arizona law.

- 13 -

> (B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

8 U.S.C. § 1357(g)(10). Specifically, Defendants argue that complying with ICE detainers constitutes permissible "cooperation" with "detention" under § 1357(g)(10)(B). Doc. 28 at 7-8.

Both parties cite the United States Supreme Court's *Arizona* decision to support their respective interpretations of "cooperate." *Arizona* was a preemption case. In finding that the portion of S.B. 1070 granting state officers independent and warrantless arrest power was preempted as an obstacle to the federal scheme, the Supreme Court explained: "There may be some ambiguity as to what constitutes cooperation under the federal law; but no coherent understanding of the term would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." 567 U.S. at 410. The Court also noted that DHS provided the following examples of activities that would constitute cooperation under § 1357(g)(10)(B): "situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities." *Id. Arizona* concerned unilateral arrests by state law enforcement officers – arrests for immigration offenses made without a request, approval, or other instruction from the federal government. *Id.* It did not address the question presented in this case: whether the INA prohibits state officials from detaining an unauthorized immigrant at the request of federal immigration authorities.

In any event, the Court is not persuaded at this stage that § 1357(g) prohibits Defendants from complying with detainers. Defendants' policy does not authorize Sheriff officers to unilaterally investigate, apprehend, or detain persons for immigration violations. Rather, it authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently

determined is removable, for a short period to facilitate ICE's apprehension of the individual. This conduct appears to fall within § 1357(g)(10)(B). Plaintiff has not shown a likelihood of success on this claim.

The Court also has a general concern about the parties' arguments. Plaintiff argues that continuing to hold an individual on the basis of an immigration detainer after the state-law justification has expired constitutes a new arrest, and proceeds to address Defendants' actions entirely in the context of arrests. While the Court does not necessarily disagree with Plaintiff's premise – that continued detention is tantamount to an arrest – the Court sees at least some meaningful difference between a unilateral arrest by a sheriff's officer and continued detention on the basis of a federal warrant. In the former, the officer is acting entirely on his own authority and on the basis of his own judgment and investigation. In the latter, the officer is acting on the probable cause determination of a federal officer empowered and trained to make such determinations. The extent and significance of this distinction will need to be explored further in this litigation, but it is noteworthy that all of the authorities relied on by Plaintiff address unilateral arrests by state officers. These include the cases cited by Plaintiff, including *Gonzales*, Plaintiff's arguments regarding the need for training and supervision of state officers under § 287(g) agreements, and Plaintiff's arguments regarding 8 U.S.C. § 1252c. Defendants also primarily cite statutes and cases dealing with unilateral arrests. This focus undoubtedly is due to a lack of authority addressing the specific issue in this case, but future briefing should consider and address the differences between unilateral arrests and continued detentions on the basis of federal warrants.

**C. Fourth Amendment.**

Even if the Sheriff is authorized by state law to comply with ICE detainers, Plaintiff claims that such compliance would violate the Fourth Amendment. But Plaintiff cites no case holding that federal immigration officers violate the Fourth Amendment when they arrest persons based on probable cause to believe they are removable under federal law, and if such arrests do not violate the Fourth Amendment when made by

federal officers, they do not violate the Fourth Amendment when made by state officers. The same Fourth Amendment applies to both, and Plaintiff concedes that the parallel provision of the Arizona Constitution, Article II, § 8, is "coextensive with" the Fourth Amendment in all aspects relevant to this case. Doc. 14 at 5.

Plaintiff makes two specific arguments as to why his detention under the ICE detainer would violate the Fourth Amendment: (1) it is not supported by probable cause to believe a *criminal* violation has occurred, and (2) probable cause must be determined by a judge, not an ICE enforcement officer. Doc. 14 at 6-8, 12-13. Neither argument is likely to succeed or raises serious questions.

### 1. Probable Cause of Removability Is Sufficient.

Plaintiff asserts that all arrests must be "based on probable cause to believe that the individual has committed a crime." Doc. 14 at 6 (quoting *Bailey v. United States*, 568 U.S. 186, 192 (2013)). This certainly is the general rule in the criminal context, *Bailey*, 568 U.S. at 192, but arrests for civil reasons are also constitutionally permissible. *See, e.g.*, *Maag v. Wessler*, 960 F.2d 773, 776 (9th Cir. 1991), *as amended on denial of reh'g* (Apr. 1, 1992) (upholding arrest based on probable cause of danger due to serious mental illness); *United States v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016) ("The Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense. Nothing in the original public meaning of 'probable cause' or 'Warrants' excludes civil offenses.") (collecting cases).

Arrests based on probable cause of removability – a civil immigration violation – have been long recognized in the courts. *See Abel v. United States*, 362 U.S. 217, 230 (1960) ("Statutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time."); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018) ("It is undisputed that *federal* immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability.") (emphasis in original). And Plaintiff does not dispute that his ICE warrant is based on probable cause to believe that he is a removable alien.

### 2. A Judicial Warrant Is Not Required.

The INA expressly authorizes ICE to arrest and detain aliens pending removal decisions "on a warrant issued by the Attorney General." *See* 8 U.S.C. § 1226. It does not require judicial approval of the warrant. The Supreme Court noted more than 50 years ago that there is "overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens." *Abel*, 362 U.S. at 233. Plaintiff cites no authority suggesting that ICE must seek judicial warrants in order to arrest individuals suspected of being removable.[3]

## V. Injunctive Relief.

Because Plaintiff has raised serious questions about whether Defendants' actions are authorized under Arizona law, he may obtain a preliminary injunction if the balance of hardships tips sharply in his favor. *Shell Offshore, Inc.*, 709 F.3d at 1291. Forty-eight hours of unauthorized detention would impose a significant hardship on Plaintiff.[4] But Defendants would also face serious hardship if the Court ordered them to refrain from complying with ICE detainers. The injunction would interfere with their judgment as elected officials, would interfere with the Arizona legislature's policy determination in S.B. 1070 that Arizona should cooperate with federal immigration enforcement, and might interfere with Arizona's interest in preventing unlawful immigration, as recognized by the Supreme Court. *See Arizona*, 567 U.S. at 397-99.

Because both sides would face hardship if the Court ruled against them, the Court cannot find that the balance tips sharply in Plaintiff's favor. As a result, Plaintiff cannot

---

[3] The Court also notes that probable cause in a particular case can be established on the basis of the collective knowledge of all law enforcement officers involved, provided there is communication among the officers. *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010); *United States v. Ramirez*, 473 F.3d 1026, 1032-33 (9th Cir. 2007). Thus, state officers may act on valid probable cause determinations by federal officers. *See United States v. Martin Takatsy, et al.*, No. CR-17-08163-PCT-DGC, 2018 WL 3221598, at *6-8 (D. Ariz. July 2, 2018).

[4] Plaintiff claims that he will suffer irreparable harm from a violation of his constitutional rights, but, for reasons explained above, he has not raised serious questions on his Fourth Amendment claim.

obtain preliminary injunctive relief on the basis of the serious questions of state law he has raised.

**IT IS ORDERED** that Plaintiff's motion for a preliminary injunction (Doc. 14) is **denied**.

Dated this 5th day of July, 2018.

_____
David G. Campbell
United States District Judge